This case is on Doc 2-17-1035. Gabrielle Sosa-Gaines v. Capital Fitness, Inc., doing business at X Sport Fitness, and Don Miles, dependents at Blue. I'm hearing all the gaps in the plaintiff's defendant, Dr. John W. Clifford. I'm hearing all the gaps in the defendant's defendant, Mr. Nancy McCall. Both sides ready to proceed? Counsel? May it please the Court. My name is John W. Whitcomb, and I, along with Robert Christman, represent Gabrielle Sosa-Gaines, who I'll refer to as Gabriella, against Capital Fitness. Ms. Gaines went to Capital Fitness for physical training and to use the facilities. Upon going there, she signed a membership agreement that included an exculpatory clause in it. The exculpatory clause is long. It's very detailed in terms of it says a lot in the entire clause. At the beginning of the case, and I'll start off with our problem with what the trial judge did, is that we believe that the exculpatory clause should have been determined during the motion for summary judgment because it's a matter of law whether it applied. So then the judge denied the summary judgment, correct, and it went to trial? That is correct. Is there an issue here about whether or not then the denial of the motion for summary judgment merged with the actual jury verdict? Because one of the questions in the whole trial would have been whether or not the exculpatory clause barred the plaintiff's claim. So how do you get around the argument that really it's not an appealable order? So I do not believe that the exculpatory, whether the facts in the matter, as the judge stated them, whether a personal trainer placing hands on the client and performing a mild adjustment which caused injury were in dispute. It's a factual matter that those are, from both the plaintiff and defendant admitted at both the summary judgment level and that's what was proven in trial. There's no difference between what was doing. Let me ask it differently. Were you appealing to denial of the summary judgment? What is the issue that you're appealing? The issue is that the exculpatory clause was presented to the jury, which it never should have been presented to the jury if the motion for summary judgment was properly decided. So as a matter of law, the affirmative defense should not have been presented to the jury. But his view was improperly decided. Trial judge believed that the issue of the exculpatory clause and its effect and the proceedings was a jury question. Correct? That's why he denied it, wasn't it? He did. He stated it was a jury question. His language was that he stated whether Mr. Miles, the personal trainer, exceeded what he should have been doing and as a personal trainer was a decision that he thought should have been made. And even if he didn't exceed what a personal trainer should have been made, whether the exculpatory clause applies to that. The jury obviously was called upon to decide whether or not the exculpatory clause barred the recovery on the alleged injury. Didn't the jury have to decide that? So it was a legal question that they should apply. The facts are established and the legal determination is. Once summary judgment is denied, your option is to appeal the denial of the summary judgment. Which we are now. No, then, not now, not after trial. We believe that since it was a question of law, whether the exculpatory clause applied, that the motion for summary judgment can still be appealed at this point. The facts are uncontested, at least at this point, as far as what the action was. That is correct. And then you have this exculpatory clause. But aren't we actually applying the facts to the exculpatory clause? And isn't that a question of fact, whether those facts fit into this exculpatory clause? I mean, why would that be a question of law? Because it is the determination of the trial judge in our matter of whether the facts that are agreed upon actually are within the scope of what the exculpatory clause said. So, I mean, the problem that we have on this is if you look at the assumption of risk, which this is an express assumption of risk, jury instructions. The jury instructions starting off with express assumption of risk says, issues involving express assumption of risk will usually be decided in the court as a matter of law. In those cases in which the jury issues are presented and it has an example, whether the release was procured by fraud or involuntarily, or under the mutual mistake of fact, the instructions to the jury will involve narrow fact issues that must be specifically tailored to the particular case. Therefore, this chapter does not include any instructions concerning the express assumption of risk. Since we all agree that the facts of what he did to her, allegedly, that he placed his hands on her and did a mild adjustment, we now have a situation where does the exculpatory clause apply or not? And that's a question of law. Well, how would that be a question of law? Because whether or not that's a chiropractic move, isn't that for the jury to decide? I don't believe that the idea of whether it's a chiropractic move has any bearing on whether it's a question for the jury. What we know about exculpatory clauses under the law is that they're not favored, that they are construed against the defendants, meaning capital fitness, that there has to be an intent of the parties with some particularity there, and they will not be construed to defeat a claim which is not explicitly covered by their terms. So the question of whether Gabrielle, you know, this was performed on her is not a question. The question is whether a reasonable person would believe that the exculpatory clause that she signed in the membership agreement would apply to what happened to her. That's supposed to be up to the judge. That's supposed to be up to the judge because we don't have any facts here, which is why we come into problems with the jury instructions, which we go through the whole situation where we have a jury instruction that says, did she sign it, right? So because if she signed it and it comes within the scope of what the exculpatory clause is, essentially it's already determined whether she can file a negligence action at that time. So whether the exculpatory clause applies or not and whether the instructions were correct, should have been given or were correctly given, I mean, you know, the other side points out with this general verdict, how do we know what effect the exculpatory clause had at all? Because you would agree that at trial the defendants contested breach of the standard of care and they contested proximate cause, correct? I would, yes. I mean, there was evidence on both of those. Yeah, I mean, it was contested. So if in fact the jury decided there was no breach of standard of care or there was no proximate cause, they may have never gotten to this exculpatory clause, which actually goes to both arguments, whether the summary judgment was improperly denied or whether the jury instructions were wrong. The law and jury instructions goes both ways, I believe. And what we're arguing on this is that the jury was not fairly, fully, and comprehensively apprised of what they were supposed to be deciding in this case. But they were apprised of all properly of all the negligence instructions, the general negligence, duty, breach, proximate cause, all that, right? So there's case law that says if there was severe prejudice based on the jury instruction, and that's the standard that we have to meet. How do we know whether there was prejudice at all, whether it was severe or none or minor or minute? If we don't have a special interrogatory saying we based it on the exculpatory clause or they could have put a special interrogatory that said, you know, basically we made this decision on breach and we never got to the exculpatory clause. Well, I mean, my position on this is that the jury instruction that actually got in front of the jury in this matter had a preordained result, and that caused severe prejudice in itself. How do we have a preordained result? So the jury instruction number 10 states in its entirety, the defendant also set forth the following affirmative defense, and defendant's claim is plaintiff signed a membership agreement and signed a personal training agreement by the terms of which she agreed to waive the right to make a claim for alleged injury. And that concludes, the plaintiff denies that she waived her claim against the defendant for alleged injury. So the affirmative defense, she did sign the membership agreement. There's no dispute by anybody that she signed the membership agreement. There's no dispute that if the membership agree, that the exculpatory clause in the membership agreement applies, that it waives her right. But it doesn't go through the questions that you would ask regarding an exculpatory clause. It wasn't foreseeable. I know, but again, we're focusing on an exculpatory clause. I'm trying to focus on other elements that there was perhaps evidence on that the jury could have reached a verdict on. When we're looking at the issues instruction, though, the issues instruction has, you know, and you never even complain about these instructions at all. First, second, third, all those three things were just general negligence instructions that the plaintiff had to prove. And then the final one says if you find from your consideration of all the evidence that any one of these propositions has not been proved or that the defendant's affirmative defense, again, getting the exculpatory clause, has been proved, then you should fight for the defendants. So how do we know we got to the or? It is my position that the instruction was so bad regarding the affirmative defense that it didn't explain what they were supposed to decide on the affirmative defense that it was inappropriately given to the jury to begin with. And that if it was a close call, which it wasn't, and the standard is severe prejudice, that we believe that there was severe prejudice by bringing this jury instruction after which and not the proposed jury instruction number 12, which was proposed by the plaintiff, which actually goes through specifically what they would have to decide in order to determine whether the exculpatory clause applied or not. So jury instruction number 7, that was submitted by the plaintiff, deals specifically under the 1301 framework, which is assumption of risk, and then states specifically what the jury would have to decide. In the case the defendant has asserted affirmative defense that the plaintiff has assumed the risk of a chiropractic spinal adjustment, the defendant has the burden of proving this affirmative defense by proving each of the following propositions as to the plaintiff. First, that the defendants and the plaintiff had a contract under which the plaintiff was to participate in activities which exposed her to the danger that resulted in the injury, which she complains, namely a chiropractic adjustment to reduce sublocation and dislocation. Second, and here we go into the whole foreseeability, the danger of one of the ordinarily accompanies the activities contemplated in the contract. Did she understand what was going on? Third, that the plaintiff had actual knowledge of this danger and understood that she had appreciated the nature and extent of the risk. Fourth, that the plaintiff voluntarily subjected herself to this danger. And fifth, that the danger was... What evidence did you present during the trial that supports this instruction as it relates to a chiropractic adjustment to reduce sublocation? So there was statements in the trial by Mr. Miles regarding the purpose of what he was doing, and he stated like a chiropractor he was reducing stress by placing hands, that he had training from a chiropractor. We argued in our reply brief and in our original brief that a layperson's testimony was appropriate for this. You don't need an expert when you have the personal trainer saying that he's doing something. He said that he did a minor adjustment, and for a full adjustment after she was complaining about what happened, that she should go for a full adjustment with a chiropractor. So the language that a chiropractic spinal adjustment, I think, is appropriate from the layperson's statements by Mr. Miles of what he did in terms of... He stated that he also had training regarding chiropractic adjustments, that he did chiropractic adjustments on other people there at the work, including clients and other people who worked there. So the idea that simply having chiropractic spinal adjustment in the specific jury instruction would kick it out, that there was actually no discussion regarding that. And part of our brief was that the idea that because you didn't have a chiropractic expert stating that this was not chiropractic shouldn't eliminate all language regarding what a layperson, Mr. Miles, was saying during his specific testimony as to what he did, his training to do what he did, and everything else. Which is why when the judge was talking about whether the exculpatory clause actually applied, he stated two things that whether it would apply. Whether he exceeded his authority, because we know from the training manuals that he's not supposed to either diagnose or treat somebody's injury, or whether even if it was in his scope of injury, whether it was foreseeable for Ms. Sosa-Gaines to know that this was going to be done to her. Those questions, again, I believe are a question of law based on what the exculpatory clause says. And so since the jury instruction was not brought to it, they had something in front of them which preordained a result. So we believe that this should be remanded for a new trial. Thank you. You will have an opportunity for rebuttal. Counsel? Good morning, Your Honors. May it please the Court. My name is Hanson Williams, and I represent the Appalese Capital Fitness, and Don Miles in this matter. As Justice Burke pointed out, the jury in this case returned a general verdict for the defendants. There was no special inauguratory presented to the jury for them to make any determinations to the applicability of the exculpatory clauses in the two membership agreements that Ms. Sosa-Gaines signed. Does that take care of both arguments, the summary judgment argument and the jury instruction argument? I believe it does, Judge. The appellants are basically faced with an insurmountable hurdle, given the fact that the jury may well have concluded that there was no negligence, as you pointed out, that there was no injury and or no injury approximately caused by anything that was done by the defendants. Counsel, how do you respond to opposing counsel's argument that whether or not the exculpatory clause applied under the facts of this case is a legal question, not a factual question for the jury? How do you respond to that? Well, there is, when you look at the exculpatory clause, it's very broad, number one, and it includes references to personal training being done by the defendants on the premises, and it's up to the jury to determine whether the language provided in the exculpatory clauses applied to what Mr. Miles, in fact, did here, what the facts were between Planoff and Mr. Miles. Why is that? He disputes that. So why do you take that position? Well, because that's what the jury, that's what the judge determined. Right, but his point is the judge is wrong. Right. I understand that. But it really doesn't matter in this case. Do you know why? I mean, the judge found that he couldn't determine as a matter of law that the exculpatory clause applied in this case, that it was a jury question. I can't determine based on the facts that I have. And you know what they were arguing? They were arguing that they were basically claiming that the exculpatory clause should have been stricken because what Mr. Miles was doing somehow constituted an unlicensed practice of chiropractic medicine and otherwise violated certain standards for personal trainers. There was no evidence of that. There was no evidence of it at the time of the summary judgment motion in 2015, and there was none offered in the trial. And now we don't know whether the jury, in fact, got to that question because there's no special error out there. Did Miles testify that he was, in fact, acting like a chiropractor? No, he didn't testify to that. That's a misstatement of the record. He said he was not a chiropractor. I mean, he did use the word chiropractic, didn't he? Well, he said, I'm not a chiropractor, and that's what he referenced. What he's talking about is the adjustment. There was nothing talking about the fact that he was a chiropractor, that he was trained as a chiropractor, that he had chiropractic training. He testified that he was trained to do the mild adjustment that he did. It's not a chiropractic move. That's what he said. He never said anything about chiropractic. He didn't know. The Illinois Supreme Court has made it clear that when a jury returns a general verdict and there's more than one theory presented, the verdict will be upheld if there's sufficient evidence to sustain any of the theories. And the objecting party in this case can't be heard to complain because they failed to request a special interrogatory as to the grounds for their verdict. This is precisely what happened in this case, Your Honors. There was ample evidence presented through Don Miles for the jury to determine that he was not negligent, didn't breach any duty. In this case, the judgment would have been in favor of the defendants. They heard no evidence that Mr. Miles, or from any witness for that matter, that Mr. Miles somehow deviated from or violated any personal training standards or protocols. The jury also heard that Mr. Miles was trained, in fact, to do the mild adjustment that he did. He's done hundreds of them in the past. He's done them all the same way without incident. The jury heard and, in fact, was shown what, in fact, Mr. Miles did during this mild adjustment and how he used minimal force, less than 10 to 20 pounds, I believe is what he testified to. There was ample evidence in the record from which the jury could have concluded that he didn't violate any duty to Ms. Sosa-Gaines and, therefore, wasn't negligent. There was also ample evidence to show that Ms. Sosa-Gaines didn't sustain any injury and certainly didn't sustain any injury that was approximately caused by what Mr. Miles did. The medical testimony presented in this case, principally from Dr. D. Jan Flippo, Dr. Valega, and Dr. Singh, was extensive and replete with references to the fact that Ms. Sosa-Gaines, through all of her thoracic MRIs, they didn't show any nerve impingement at the T6-7 level. There was no disc herniation at the T6-7 level. All of her neurological studies were normal throughout five, six years. And their complaints of diffused pain throughout her entire body were completely and entirely unexplained by any objective medical evidence. There was also testimony from these doctors that the placement of pressure on the thoracic spine, as described by Planoff or Mr. Miles, could not and did not cause any injury in Ms. Sosa-Gaines. A determination of no injury would effectively eliminate any damages that she had and would necessarily result in a verdict for the defendants. As I see it... Counsel argues in his brief that this Nassar case controls that, on this two-issue rule, if it involves instructions in some fashion, that whether there's a special interrogatory or not doesn't matter. I think that's not the case, because how can they prove any prejudice, much less serious prejudice as required under the law, if they don't show that this somehow made a difference in the outcome of the case? They don't have the ability to do that. The finding of no injury, no injury approximately caused, I think is maybe all the more likely in this case, based on the jury question that was presented to the trial court at the time of their deliberations. What's the injury? That was a question written and posed to the judge at the time. While it's our belief that the question of the defendant's affirmative defense and the applicability of this exculpatory clause in both the membership agreements was properly presented to the jury as a fact question, there is no evidence to indicate that the jury returned a verdict based on the applicability of that language for the defendants. This is an insurmountable hurdle for the appellants in this case. Without a special interrogatory, based on the affirmative defense, they cannot show that there was any difference made in the outcome of this case, especially given the ample evidence to sustain a general verdict for the defendants based on lack of duty, negligence, injury, and approximately caused injury. The notion that the jury's verdict in this case is somehow contrary to the manifest way of the evidence is wholly contradicted by all the evidence and the witness testimony as we recited in our brief. In fact, the appellant doesn't even argue that the verdict was against the manifest way of the evidence. Nowhere in their brief do they argue that. I think for those reasons alone, the verdict in the judgment thereon should be affirmed. With respect to the 13.01 instruction relative to assumption of risk, the notes on use for the IPI for 13.01 clearly make such an instruction inapplicable and inappropriate on their face. They specifically state that the instruction can only be used when an affirmative defense of assumption of risk has specifically been raised by the pleadings. It wasn't. The appellants are claiming that we did raise that, but it was never raised as a defense. The notes on use also state that the instruction for under 13.01 is proper only when there is specific danger in question that was inherent in the employment or activity and was not created by the defendant's negligence. The sole count on the complaint, which was unamended throughout the entire proceeding of this case, is for negligence against both defendants. Isn't there an issue of assumption of risk in the exculpatory clause? I mean, the language is used in the exculpatory clause. The person signing it assumes the risk of this then. That doesn't make it applicable under 13.01, and that's made clear based on the notes on use. It's inapplicable and not appropriate, and that's what the trial judge found. I believe that was proper, certainly not an abuse of discretion. Moreover, the proposed instruction from plaintiff, their number seven, based on this 13.01 instruction contained multiple references to a chiropractic spinal adjustment, which was categorically unsupported by any evidence in the case. The refusal of the 13.01 instruction was proper, not an abuse of discretion. I think defendant's IPI 20.01 instruction made it very clear what it was that the jury had to consider based on the applicability of the exculpatory clause. They were sufficiently that the instruction was clear, not misleading, fairly correctly and correctly stated the law and allowed the jury to determine whether the language in the exculpatory clause was applicable to these facts. There's zero evidence of any confusion that was displayed by the jury in this regard. The plaintiff argues without any citation to anything in the record concerning confusion by the jury. The claim that a non-pattern instruction should have been given has been waived because counsel didn't present any non-pattern instruction. In fact, they go so far as to say it was a trial court's obligation to present a non-pattern instruction, which I find to be completely contrary to the law. Without a special auditory being submitted or answered by the jury, it's equally or even more likely that they determined there was no breach and therefore no negligence or no injury, which was approximately caused by anything that the defendants did. The palancers are simply unable to show any prejudice, much less serious prejudice as is required under law. And there was some question about the applicability of the merger rule in this case, and I do believe certainly it applies with respect to this denial of plaintiff's summary judgment motion. The jury heard evidence and was presented with the issue as to whether the contact that Mr. Miles had with a plaintiff at Capital Fitness fell within the parameters of that clause. The rationale for the merger rule was that it would be unjust for the prevailing party, us, who won summary judgment after the evidence was more completely presented. It was presented. The only exception to that rule applies when there's a question of law which isn't presented to the jury, and it was in this case. So that exception is inapplicable. And again, while the jury was presented with that issue of the applicability of our affirmative defense, we don't know whether, without a special auditory, whether they actually got to that question. I guess the issue is whether the jury should have been presented with that. If you agree that that's a question of law, and whether or not the exculpatory clause applies, then if it is a question of law and should have been answered in favor of the plaintiff, then it never should have been before the jury. I mean, that's the argument from the other side. Right, but how do we know whether it made any difference in the outcome of the case? That's my point. Well, for all the foregoing reasons, Your Honors, Capital Fitness and Don Miles request that the jury's verdict and judgment thereon be affirmed. Do you have any further questions? Questions. Thank you very much. Thank you. I guess I'll start with the merger rule. So exception exists where the summary judgment motion and the trier of fact are determining a question of law. And we have determined, and we have cited the Second Circuit case of Calarco, which is a very similar exculpatory clause, that it is a question of law that was decided at summary judgment. So the law is that when the reviewing court is asked to review a question of law, which we are asking this court to do, the denial of the summary and judgment does not merge with a judgment which is addressed on appeal. It's decided by this panel de novo. Didn't you argue, though, in the motion to strike the affirmative defense, as well as the summary judgment motion, that this, quote, unlicensed medical procedure was explicitly outside of the exculpatory clause? Because the exculpatory clause talks about we're not diagnosing or treating any medical condition, and you argue that that was an unlicensed medical procedure, what the person did. We did. And the basis for that is this, is that we know what a personal trainer does. He helps you lift weights. He tells you what strategies you should do. We're getting into a lot of facts here. So my question to you is, doesn't that raise an issue of fact? Sure. The facts, the fact that he pushed on her spine is given. I mean, that's an unknown fact that's not in dispute. And we are saying because we have facts not in dispute that then we can go, this is a question of law. What I'm saying is, though, you say you have pressing on the spine, but you're saying that that not only is just pressing on the spine, but it's an unlicensed medical procedure that's outside the scope, explicitly outside the scope. When we get into those areas, are we not talking about facts, whether or not it is, in fact, an unlicensed medical procedure? So the reason I started going into what a personal trainer did is evidence was submitted both at the summary judgment and at trial of what a personal trainer does. And a personal, there's no mention in any of the testimony besides Mr. Miles saying, I do this to other people, that a personal trainer is allowed to either diagnose or treat a medical condition. And so – Did any other personal trainer testify besides Mr. Miles? No, Your Honor. Mr. Miles testified as to what, and he presented and we presented what a personal trainer's guidelines for what they are doing. Right, but was there any evidence that what he did was a chiropractic procedure? He called it a mild adjustment. I can adjust the position of the picture. I mean, so you're hanging your hand on the use of the word adjustment? He described how he got training to do the mild adjustment at trial, opposed to what counsel said. He actually described that he got training in order to do that from chiropractors as to what he was doing. Here's my question. Did anyone testify that what he did was, in fact, a chiropractic procedure or a procedure that's limited to a chiropractor? No, besides him testifying as to how that he determined what he would do to her. Okay. And that being outside of the scope of what the training manuals that he agreed and his ethical guidelines as a personal trainer. Did you agree that whether or not it was outside the scope of the training manual was a factual question for the jury? So, as the judge said, that it doesn't matter whether it's within the scope or outside of the scope of what it's done. It matters whether it's foreseeable under the exculpatory clause that she would do that. Because, as Your Honor pointed out, the issue of a negligence case is that you have to prove that there was a standard of care, that there was a breach of that standard of care, that all this evidence would come in in that statement. But in terms of what the exculpatory clause says is just whether it was foreseeable that this event would occur. So whether he would lay hands on her on either side and do a mild adjustment as he admitted, is that foreseeable under the exculpatory clause? Because it completely exonerates capital offenders from any liability if it's in the exculpatory clause. And our problem is that we have 13.00, which says, exculpatory clauses, there's only certain issues, it's a matter of law. And then you have 13.01, which he correctly states has some problems with it. So the question is, once the motion for summary judgment was denied, where does the trial attorney go in terms of an instruction? And he went to instruction number 7, which he copied from 13.01, in order to show what the actual jury would have to decide at that point, if I may just finish, what the jury would actually have to decide from that. Because jury instruction number 10, which was submitted by the defendant, simply says that there's a membership agreement with an exculpatory clause that was signed by Gabrielle Sosa Gaines, and it exists. So the jury didn't really have to decide anything at that point, because it was in front of them with her signature. And it said in the affirmative defense that it waives all of her rights to claim for negligence at that point. So we believe that this matter should be remanded for a new trial. Thank you. Thank you very much. There will be a written decision issued in due course, and we are adjourned for the afternoon.